LUSBY ET AL. *v.* NETHKEN, Executor of the
Estate of Caroline P. Nethken

[No. 439, September Term, 1970.]

*Decided June 25, 1971.*

The cause was argued before HAMMOND, C. J., and
BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*John F. Somerville, Jr.,* for appellants.

*Wilbur D. Preston, Jr.,* with whom were *Luther B.*

*Ditch, Ascanio S. Boccuti* and *Whiteford, Taylor, Prestor, Trimble & Johnston* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This has to do with a minor rumpus in the Lusby-Nethken vendetta. For the full flavor thereof see *Lusby v. Nethken,* 256 Md. 469 (1970), and *Nethken v. Lusby,* 262 Md. 588 (1971). It will be recalled that Caroline Pritts Nethken died 2 October 1966 and that letters testamentary were issued to her son Robert on 17 October 1966. On or about 7 April 1967 Louise Nethken Lusby and George Nethken, who with their brother Robert are the residuary legatees, filed a caveat to Caroline's will. The caveat was dismissed on 12 February 1968. Upon Robert's petition the Orphans' Court of Baltimore County, on 5 May 1970, allowed a counsel fee of $6,400 to Robert's counsel for services rendered in connection with the administration of the estate. From the order overruling the exceptions filed by Louise and George they have taken this appeal.

Louise and George contend that counsel's services were only minimal in the administration of the estate. By far the greater portion of counsel's time and effort, they say, was given over to *Lusby* (256 Md.) where Robert was sued as an individual rather than as executor. Robert concedes that a fair share of counsel's efforts eventually were useful in *Lusby,* but he insists that the award is reasonable compensation for the services rendered the estate.

The power of an orphans' court to direct the payment of a counsel fee out of the corpus of an estate is basically statutory. *Gradman v. Brown,* 183 Md. 634 (1944); *Mudge v. Mudge,* 155 Md. 1 (1928). The controlling statute was Code (1964 Repl. Vol.), Art. 93, § 10, which, before its repeal and reenactment, Code (1969 Repl. Vol.), Art. 93, § 7-602, read as follows:

"For legal services rendered by an attorney at law to an estate or to an executor or administrator of an estate, the orphans' court may on his own petition allow such attorney such sums as it may deem reasonable as an expense in the administration account of the executor or of the administrator during whose incumbency such services were rendered."

The allowance of a counsel fee by an orphans' court requires the exercise of judgment and discretion. Ordinarily we will not disturb such an award unless it is shown that there has been an abuse of that discretion. *Dessel v. Goldman,* 231 Md. 428 (1963) ; *Kenny v. McAllister,* 198 Md. 521 (1951). The question before us then is whether this award is so unreasonable as to amount to an abuse of that discretion. We see nothing new here and we think the law is clear. In *American Jewish Joint Distribution Comm. v. Eisenberg,* 194 Md. 193, 200 (1949), we said:

"Canon 12 of the Canons of Professional Ethics [1] which were adopted by the American Bar Association in 1908 and by the Maryland State Bar Association on June 25, 1948, provides: 'In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. * * * In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the ac-

---

1. Maryland Rule 1230 (added 13 October 1970, effective 2 November 1970) adopted the American Bar Association's Code of Professional Responsibility (adopted by the House of Delegates of the American Bar Association on 12 August 1969). The Maryland State Bar Association adopted the same Code on 9 July 1970. The Code appears in Appendix F of the 1970 Cumulative Supplement to the Maryland Rules at page 329. The provisions of the new Code relating to the reasonableness of counsel fees are not substantially different from old Canon 12.

ceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.'

"We accept this Canon as a guide, and we also reaffirm the rule that the principal elements to be considered in determining the reasonableness of counsel fees are the amount involved, the character and extent of the services, the time employed, the importance of the question, and the fidelity and diligence of the attorney. *Knapp v. Knapp,* 151 Md. 126, 134 A. 24."

To the same effect *see In the Matter of Family Savings and Home Loan Ass'n, Inc.,* 246 Md. 219 (1967) ; *Dessel v. Goldman, supra;* and *Tucker v. Dudley,* 223 Md. 467 (1960).

In the circumstances, we do not think the award amounts to an abuse of discretion. As we learned in *Lusby* (256 Md.), Louise and George were dissatisfied with the state of their mother's affairs. The caveat they filed six months after probate alleges virtually the same legal and factual issues which eventually were tried in *Lusby* (256 Md.). It is true, of course, that, following a compromise of sorts, the caveat was dismissed but the matter was not resolved until February 1968. Even before the caveat was filed, however, Louise and George made it distressingly clear to Robert that an attack upon the

588

estate was imminent. It would have been remiss of him not to have engaged counsel.

We have examined the pleadings, the correspondence, the testimony and counsel's time records. It seems to us that taken all together they support the award. Louise and George put heavy emphasis upon counsel's "admission" that the time sheets may not be "precisely correct." We find this considerably less than persuasive. It is hardly likely that the time records of any attorney kept over a similarly extended period would be literally precise. Indeed, as the "admission" goes on to suggest, it is probable that the time was understated.

It is true, of course, that the award amounts to about 44 percent of the estate accounted for but we cannot exclude from our consideration the fact that the gross estate for federal estate tax purposes was $80,500. We note, also, that the estate could not have been completely administered upon until May 1970 because of the litigation referred to early on and, also, that the caveat required something more than "routine" services.

*Order affirmed.*
*Costs to be paid by the appellants.*