633 A.2d 403

Joyce MERLING

v.

Raymond MERLING, Personal Representative
of the Estate of Sara E. Holliday.

No. 1127, Sept. Term, 1993.

Court of Special Appeals of Maryland.

Nov. 30, 1993.

Christian B. Wilson, Bel Air, for appellant.

Allan J. Culver, Jr., Bel Air, for appellee.

Argued before BLOOM, DAVIS and MOTZ, JJ.

BLOOM, Judge.

Appellant, Joyce Merling, filed a caveat in the Circuit Court for Harford County, sitting as the orphans' court, challenging a will executed in 1986 by Sara E. Holliday, the testator. Appellant, who was the personal representative named in an earlier will, alleged that the 1986 will was procured through undue influence and that the testatrix was incompetent at the time of its execution. By request, issues of fact were transmitted to the circuit court, sitting as a court of law. Before trial, appellant proffered the testimony of two witnesses: the first witness would relate statements made by the testator in 1981 concerning her feelings toward one of the co-beneficiaries under the will, and the second witness would testify to statements made by one of the co-beneficiaries under the will. Appellee, Raymond Merling, filed a motion *in limine* to exclude the proffered testimony, and the circuit court granted that motion. The jury found that the testatrix was competent to execute the will and that the will was not procured by undue influence.

In this expedited appeal, the following issues are presented.

1. Whether the circuit court abused its discretion when it excluded as irrelevant the testimony of the testatrix

concerning her feelings toward one of the co-beneficiaries.

2. Whether the circuit court erred by excluding as inadmissible hearsay the statement made by one of the co-beneficiaries.

## Factual Background

### (From Agreed Statement of the Case and Facts, Md.Rule 8–207)

The testatrix resided in Westmoreland, Pennsylvania, for most of her life. In 1982, she executed a Will (the "Pennsylvania Will") in which she named Joyce Merling as executrix, bequeathed to her grandsons, Raymond and George Merling, the sum of One Dollar ($1.00) each, and left the remainder of the estate to her great grandchildren.

In October, 1986, Mrs. Holliday telephoned Raymond, asking him to let her reside with him in Maryland while she underwent cataract surgery and for a period of recuperation afterward. Raymond went to Pennsylvania and brought his grandmother back to Maryland. Two days after her arrival, Mrs. Holliday executed a Power of Attorney, naming Raymond as Attorney-in-Fact.

From 30 October through 15 December 1986, Mrs. Holliday resided with Raymond. During that period, Raymond, with the assistance of his brother George, managed Mrs. Holliday's Pennsylvania bank accounts, paid her bills, and supervised her medical care.

On 5 November 1986, Mrs. Holliday executed a new will (the "Maryland Will"), revoking any and all previous wills and codicils, and naming Raymond Merling as Personal Representative. In contrast to the earlier Pennsylvania Will, the testatrix devised her entire estate to Raymond and George. On 5 November 1986 she fell and was taken to Fallston General Hospital. She was later transferred to Manor Care Nursing Home, where she died on 17 February 1987.

On 9 April 1990, Joyce qualified as Executrix pursuant to the Pennsylvania Will and was granted letters testamentary by the Register of Wills for Westmoreland County, Pennsylvania.

On 29 June 1990, pursuant to the Maryland Will, Raymond was appointed Personal Representative of the Estate of Sara E. Holliday under an Administrative Probate Order issued by the Register of Wills for Harford County.

On 5 October 1990, Joyce filed a petition to challenge jurisdiction and to caveat the Maryland Will in the Matter of the Estate of Sara E. Holliday in the Circuit Court for Harford County, sitting as the Orphans' Court, Estate Number 24,969.

On 29 November 1990, Raymond filed a request for the following issues to be transmitted to a court of law to be tried by jury:

(a) Was the paper writing dated November 5, 1986, purported to be the Last Will and Testament of Sara E. Holliday, executed by her when she was legally competent to make a will?

(b) Was the paper writing dated November 5, 1986, purported to be the Last Will and Testament of Sara E. Holliday procured by undue influence exercised on her while in a state of diminished mental capacity?

(c) Were both the individuals whose names were subscribed as witnesses to the said paper writing dated November 5, 1986, and purported to be the Last Will and Testament of Sara E. Holliday credible witnesses who placed their signatures thereon in the presence of Sara E. Holliday?

After a hearing conducted on 21 February 1991, the Circuit Court for Harford County, sitting as the Orphans' Court, determined that it had jurisdiction over the administration of the decedent's estate.

On 12 May 1993, prior to trial and before a jury was impaneled, Raymond filed a motion *in limine* seeking to

exclude certain testimony Joyce sought to introduce into evidence.

Joyce proffered that Robert Cunningham would testify to a lengthy discussion he had with the testatrix in 1981 before she executed the Pennsylvania Will, wherein she stated she distrusted George, doubted his honesty, and did not want him to have access to her funds.

Joyce also proffered that Carla Cunningham would testify that in late 1986 George told her that he and Raymond knew the testatrix was troubled by bad vision, was almost incoherent at the time the Maryland Will was executed, and was admitted to a nursing home in Westernport, Maryland to discourage visits by Joyce and her children during which they could discuss her will.

The circuit court granted appellee's motion *in limine*, ruling that the testatrix's statements to Robert Cunningham concerning George were irrelevant because they would introduce events too remote in time and that George's statement to Carla Cunningham was inadmissible hearsay. During the trial, Joyce introduced into evidence a video tape of Mrs. Holliday, made in 1986 shortly before the Maryland Will was executed, asserting that the tape contained statements made by Mrs. Holliday that indicated her negative feelings toward George.

### Preservation of Error

We shall address, as a preliminary matter, the question of whether the issues now raised by appellant were preserved for appellate review.

Ordinarily, an error, if any, in granting a motion *in limine* is not preserved if there was no offer of proof at trial. *See Funkhouser v. State,* 51 Md.App. 16, 23–25, 440 A.2d 1114, *cert. denied,* 293 Md. 331, 444 A.2d 50 (1982). But if, as in this case, the ruling *in limine* is made just prior to trial and the court, after considering a proffer of the evidence, rules that it will be excluded, the issue will be deemed to be preserved for review. *Turgut v. Levine,* 79 Md.App. 279, 284–88, 556 A.2d

720 (1989). *See also Leet v. Totah,* 329 Md. 645, 666, 620 A.2d 1372 (1993).

### Statement of the Testatrix to Robert Cunningham

 Appellant argues that the circuit court abused its discretion in excluding the testatrix's negative statements about George. The court ruled that the statements were irrelevant, because they were made five years before the Maryland Will was executed and were, therefore, too remote in time to have probative value relating to the issues in the case. Appellant contends that the statements were relevant to show that the Maryland Will was procured by undue influence and that the testatrix lacked the requisite mental capacity to execute a new will; therefore, they should have been admitted into evidence.

> For an item of evidence to be admissible, it must be both relevant and material. Evidence is material if it tends to establish a proposition that has legal significance to the litigation. Evidence is relevant if it is sufficiently probative of a proposition that, if established, would have legal significance to the litigation.

*Paige v. Manuzak,* 57 Md.App. 621, 632, 471 A.2d 758, *cert. denied,* 300 Md. 154, 476 A.2d 722 (1984). Trial judges are vested with wide discretion as to rulings on the relevancy of proffered evidence. *Fleming v. Prince George's County,* 277 Md. 655, 680, 358 A.2d 892 (1976); *see also McCray v. State,* 305 Md. 126, 133, 501 A.2d 856 (1985); *Fidelity Deposit Co. v. Olney Associates, Inc.,* 72 Md.App. 367, 372, 530 A.2d 1 (1987). A ruling on the relevancy of evidence will be overturned only if the trial judge abused his discretion in making his decision. *Eagle–Picher Inc. v. Balbos,* 84 Md.App. 10, 92, 578 A.2d 228 (1990), *aff'd in part, rev'd in part on other grounds,* 326 Md. 179, 604 A.2d 445 (1992). An abuse of discretion exists when a judge makes a decision that is extremely unreasonable. *See Lusby v. Nethken,* 262 Md. 584, 278 A.2d 552, 554 (1971). With regard to probate matters, an abuse of discretion occurs when a judge misapplies existing law, makes a manifestly unreasonable judgment, or rules with partiality, prejudice, or

ill will. *See In re: Estate of Vaughn,* 315 Pa.Super. 354, 461 A.2d 1318, 1320 (1983) (imposition of costs in orphans' court proceeding is a matter left to the sound discretion of the court and will not be disturbed on appeal absent an abuse of discretion). An abuse of discretion in a probate matter connotes more than an error of law or judgment, it implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *See In re: Estate of Russolillo,* 69 Ohio App.3d 448, 590 N.E.2d 1324, 1326 (Ohio App.3d 1990) (removal of executor).

Based on our review of the record, we conclude that the circuit court judge did not abuse his discretion by excluding the testatrix's negative statements about George to Robert Cunningham. Those statements tended to show a dislike for or distrust of George that would explain the One Dollar bequest to him in the Pennsylvania Will, and were thus offered to show that the later bequest of half the estate to him was "unnatural." The circumstances had clearly changed, however, demonstrating a basis for a change of mind by the testatrix. The testatrix had made the negative statements about George five years before she executed the Maryland Will, while she lived in Pennsylvania. The Maryland Will was executed after she had moved into Raymond's residence, where he cared for her, and George had joined Raymond in helping her manage her financial affairs. In view of the lapse in time and change in circumstances, we are not persuaded that the circuit court judge abused his discretion in ruling that the proffered evidence was too remote to have any probative value regarding the issues in the caveat case.

### George Merling's Statement to Carla Cunningham

Appellant argues that George's statement should have been admitted as an exception to the hearsay rule that is applicable when one who is in a joint interest with a party makes an admission against that interest. Appellant proffered that Carla Cunningham would testify that George made a statement, after the Maryland Will was executed, that may be deemed to be an admission that he and Raymond knew that the testatrix lacked mental capacity to execute an enforceable will and that Raymond placed the testatrix in a nursing home

to prevent her from discussing the Maryland Will with her family.

▉ Hearsay evidence consists of parol testimony about an out-of-court statement offered to prove the truth of the matter asserted. Lynn McLain, *Maryland Evidence*, § 801.1 (1987, Supp.1992). The oral testimony proffered by appellant concerned George's out-of-court statement about what he and Raymond knew at the time the Maryland Will was executed. Because it would be offered to prove the truth of that knowledge, the proffered testimony of Carla Cunningham was hearsay. To determine the admissibility of George's statement to Carla as an "admission" exception to the hearsay rule, we shall consider and address three possible exceptions: (1) declaration against interest by a non-party, (2) admission by one in joint interest with a party opponent, and (3) admission of a party opponent.

### (1) Declaration Against Interest by a Non–Party

▉ If we assume that George is not a party to the caveat suit, his declaration against his own pecuniary interest is inadmissible. A declaration against the pecuniary interest of a non-party is admissible as an exception to the hearsay rule only where the out-of-court declarant is unavailable to testify. Lynn McLain, *Maryland Evidence*, § 804.1. To be considered unavailable, a declarant must be "dead, insane, or so ill or infirm that he or she cannot be procured as a witness to testify at the trial." *Id.* A declarant is also deemed unavailable if beyond the jurisdiction of the court or if his testimony is privileged. *Id.*

We find no indication in the record that George was "unavailable" at the time of the trial. Because he could have testified at trial, the declaration against interest exception does not apply.

### (2) Admission By One in Joint Interest With a Party Opponent

▉ Appellant asserts that George's statement falls under the hearsay rule exception that applies to admissions made by

someone jointly interested with a party to a suit. *Id.,*
§ 801(4).6. Whether one co-beneficiary of a will is jointly
interested with another co-beneficiary for purposes of this
hearsay exception is an issue of first impression in Maryland.
*See,* however, *Walkup v. Pratt,* 5 H & J 51, 57–58 (Md.1820),
in which the Court stated,

> It would be a dangerous doctrine to permit one representa-
> tive of a deceased person, however small his interest might
> be in the estate, and who was no party to the suit, to defeat
> by his declarations, the rights of all others claiming under
> the same estate.

> . . . . .

> "[A]n opinion said to be expressed by one of the devisees, is
> not admissible to prove that the testator was insane."
> [Quoting from Mass Reports, 71.]

*Walkup* is in accord with the great majority of authority
from other jurisdictions, which holds that

> [s]tatements or admissions made by a devisee or legatee
> concerning acts of undue influence in procuring the execu-
> tion of a will, while admissible where the interests of all the
> devisees or legatees are joint, are not admissible where the
> interests are separate and no conspiracy is charged.

*Belfield v. Coop,* 8 Ill.2d 293, 134 N.E.2d 249, 253 (1956).

In this case, George and Raymond took separately, not
jointly, under the will of Sara E. Holliday; the bequest of the
residuary estate was not to the two of them jointly, but one-
half to each of them. George's extrajudicial declaration
against his interest in the estate, therefore, is inadmissible, as
an admission by one in joint interest with a party, in order to
defeat the bequest to Raymond of one-half the testatrix's
residuary estate.

█ Where a conspiracy between co-devisees is charged
and shown, however, a joint interest is deemed to exist and
the statements of one co-conspirator are admissible against all
co-conspirators. *Zorn v. Zorn,* 64 S.W.2d 626, 629 (Mo.1933);
*accord, Linebarger v. Linebarger,* 143 N.C. 229, 55 S.E. 709,

711 (1906); *Ex Parte McKie,* 107 S.C. 57, 91 S.E. 978, 984 (1917). *See also* 167 A.L.R. 13, 94. Because the joint interest is created by a conspiracy, the admission must have occurred before the execution of the will, which is the accomplishment of the object of the conspiracy and its termination. *See Belfield v. Coop, supra,* (co-conspirators must agree to perform an unlawful act in future and not *ex post facto* ). *See also Dennis v. Neal,* 71 S.W. 387, 388 (Tex.1902) (declarations against interest as to undue influence made by a co-beneficiary, to the prejudice of other beneficiaries, on the ground of a conspiracy among all the beneficiaries, are admissible where the declarations were made before the execution of the will); *Shailer v. Bumstead,* 99 Mass. 112 (1868) (separate admissions that a will was procured by joint acts of undue influence made by co-legatees are admissible when made during the prosecution of the joint enterprise). *Cf. Piracci v. State,* 207 Md. 499, 115 A.2d 262 (1955). *But see Coghill v. Kennedy,* 119 Ala. 641, 24 So. 459, 471 (1898) (admission of co-beneficiary regarding conspiracy to procure will by undue influence is admissible even though made after the execution of the will; the common purpose of the conspiracy contemplated and embraced probate of the will).

According to the testimony proffered by appellant, George made this admission after the Maryland Will was executed and the alleged conspiracy had terminated; therefore, the admission does not meet the hearsay exception relied on by appellant.

■ George's alleged admission to Carla Cunningham is also inadmissible under the conspiracy theory for another reason. Such statements are admissible only if evidence other than the statement in question is introduced to establish the conspiracy. *Schoenhoff v. Haering,* 327 Mo. 837, 38 S.W.2d 1011, 1016–17 (1931); *In re Benjamin,* 136 N.Y.S. 1070, 1082 (1911) (admissions may be brought into evidence only when the conspiracy is shown independently through other means); *In re Hermann's Will,* 87 Misc. 476, 150 N.Y.S. 118, 132 (1914) (conspiracy must be charged at some stage of the case before

the declarations of one conspirator are evidential against the other).

The record, *i.e.,* agreed statement of facts, does not contain probative evidence, independent of George's admission, that establishes a conspiracy between him and Raymond. That the testatrix executed a Power of Attorney two days after arriving in Maryland and that George and Raymond were to receive the entire estate under the Maryland Will could give rise to an inference that the Maryland Will was procured through undue influence. There is, however, other evidence in the record tending to negate that inference. It is not unreasonable to infer that an eighty-four-year-old woman would appoint an attorney-in-fact to manage her affairs just before undergoing surgery and that, in gratitude for her grandsons' care and attention, the testatrix changed her mind from the time she executed the Pennsylvania Will. Without independent evidence of a conspiracy between George and Raymond to exert undue influence on Mrs. Holliday in order to procure a favorable testamentary disposition, George's admission constitutes inadmissible hearsay as to Raymond.

### (3) Admission of a Party Opponent

Although George's statement was not admissible against Raymond as the admission of a non-party in privity with a party by virtue of a joint interest, we hold that George was a party to the caveat action and, therefore, that his statements to Carla Cunningham may be introduced by the caveator as an admission of a party opponent.

"It is well settled in [Maryland] that a caveat to a will is a proceeding *in rem* [,] and all parties in interest need not be made parties to the proceeding." *Tatem v. Wright,* 139 Md. 20, 29–30, 114 A. 836 (1921).[1] Although parties in interest

---

1. In accordance with the practice of this Court, this appeal is titled "Joyce Merling, Appellant v. Raymond Merling, Personal Representative of the Estate of Sara E. Holliday, Appellee." Md.Rule 6–121 provides that unless specified otherwise the form of court papers (filed in the orphans' court and with the Register of Wills) relating to probate

do not have to be joined in a caveat proceeding, they must receive notice of the caveat, and the notice must include a statement that the interested party may file a response to the caveat. We assume that George, as a beneficiary under the Maryland Will, received notice of the caveat but chose not to exercise his right to participate in the proceedings by filing a response to the caveat.

There are conflicting cases from two other jurisdictions concerning the status of a beneficiary who fails to participate in a caveat proceeding. In *Estate of Relph,* 192 Cal. 451, 459, 221 P. 361 (1923), the Supreme Court of California held that, although a contest of a will is a proceeding *in rem,* the parties consist only of those persons interested in the will who have appeared and filed a written answer. On the other hand, in *Merrick v. Continental Illinois Nat'l Bank and Trust Co. of Chicago,* 10 Ill.App.3d 104, 293 N.E.2d 767 (1973), the Supreme Court of Illinois overturned a default judgment against beneficiaries who failed to appear or file a responsive pleading. The Court reasoned that the duty to defend a caveat is placed upon the executor. *Id.,* 293 N.E.2d at 773–74. In *Meyer v. Henderson,* 88 Md. 585, 590 (1898), 41 A. 1073, *reargument denied,* 88 Md. 585, 42 A. 241 (1899), the Court of Appeals, addressing a slightly different issue, held that a legatee under a will that was revoked in a caveat proceeding was deemed a party entitled to appeal the decision of the orphans' court. The Court reasoned that Maryland Code Article 5, § 58,[2] which allowed a "party" to appeal a ruling by the orphans' court, should not be construed in the technical sense of the record. The term "party" includes one affected by the decision. *See Davis v. Gerhard,* 35 Md.App. 243, 244, 370 A.2d

matters should be styled "In the Estate of...." Md.Rule 6–431, which relates to caveat suits, does not specify a different style. Accordingly, the case was titled, both in the orphans' court and the circuit court, "In the Estate of Sara E. Holliday." The manner in which a case is titled does not, of course, affect the status of the parties having an interest in the proceedings.

**2.** Most recently repealed and reenacted as Md.Code (1989, 1993 Supp.) § 12–501 of the Cts. & Jud.Proc. Article.

1140 (1977). (Under Md.Code (1989, 1993, Supp.) § 12–501 of the Cts. & Jud.Proc. Article, the term "party" is not used in a technical sense but means any one whose interest the order has a direct tendency to affect adversely.)

■ We believe that the holdings of *Meyer v. Henderson* and *Davis v. Gerhard* require us to adopt the following rule: A beneficiary under a will who does not appear or respond to a caveat is nevertheless deemed a party to the caveat suit for all purposes, including admissibility in evidence of an admission by that party as an exception to the hearsay rule. Accordingly, we hold that the court erred in excluding, as inadmissible hearsay, the proffered statement of George Merling to Carla Cunningham.

JUDGMENT VACATED AND CASE REMANDED FOR FURTHER PROCEEDING CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.